UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

**Dahl Automotive Onalaska Inc.**
**dba Dahl Lincoln**
**561 Theater Road**
**Onalaska, WI 54650**

**Garbo Motor Sales, Inc.**                                    Case No. 20cv932
**dba Garbo Lincoln**
**3077 Douglas Avenue**
**Racine, WI 53402**

**Griffin Ford Lincoln Fort Atkinson, Inc.**
**1642 Janesville Avenue**
**Fort Atkinson, WI 53538**

**Jim Olson Ford Lincoln, LLC**
**440 South Duluth Avenue**
**Sturgeon Bay, WI 54235**

**Kayser Ford, Inc., dba Kayser Lincoln**
**2303 West Beltline Highway**
**Madison, WI 53713**

**Kunes Country Ford-Lincoln, Inc.**
**1234 East Geneva Street**
**Delavan, WI 53115**

**Lidtke Motors, Inc.**
**701 Park Avenue**
**Beaver Dam, WI 53916**

**The Motor Company, Inc.**
**dba Lincoln of Marinette**
**W1680 US Highway 41**
**Marinette, WI 54143**

**Uptown Motors, Inc.**
**2111 N. Mayfair Road**
**Milwaukee, WI 53226**

**V & H Automotive, Inc.**
**2414 North Central Avenue**
**Marshfield, WI 54449**

**Y & D Corp.**
**dba Dorsch Lincoln**
**2641 Eaton Road**
**Green Bay, WI 54311,**

        **Plaintiffs,**

**v.**

**Ford Motor Company**
**dba Lincoln Motor Company**
**One American Road**
**Dearborn, Michigan 48126,**

        **Defendant.**

## COMPLAINT

The above-named plaintiffs complain against the defendant as follows:

### OVERVIEW OF THIS ACTION

1. Each of the plaintiffs in this action is a motor vehicle dealer enfranchised by the defendant Ford Motor Company dba Lincoln Motor Company ("Lincoln") to sell and service Lincoln passenger cars and light trucks ("vehicles"). The plaintiffs' franchises include the right to buy vehicles from Lincoln for resale. Under the terms of their dealer agreements with Lincoln, the plaintiffs pay an invoice price per vehicle that is established by Lincoln, but are eligible to receive a certain amount, which Lincoln refers to as "margin," back from Lincoln after the vehicle has been sold. The amount of "margin" that a dealer receives is equal to a percentage of the vehicle's manufacturer's suggested retail price ("MSRP") and effectively reduces the net price that the dealer pays for the vehicle. From 2012 until July of this year, the maximum margin that a dealer was eligible to receive per vehicle purchased and resold was

2

equal to 5.75% of each vehicle's MSRP.  In July 2019, Lincoln announced that it intended to significantly reduce the margin percentage for Lincoln dealers who do not commit to constructing an exclusive showroom facility for Lincoln that complies with Lincoln Vitrine Facility design (the "Exclusive Lincoln Vitrine Facility standard").  By doing so, Lincoln is engaging in the act of coercing or attempting to coerce the plaintiffs to comply with an unfair, unreasonable and inequitable performance standard that is not commercially reasonable given the cost of the facility and the sales potential for Lincoln vehicles in the plaintiffs' respective markets.  Lincoln's actions violate several provisions of the Wisconsin statutes as well as the federal Robinson-Patman Act.  This action is aimed at preventing Lincoln from continuing to engage in these violations and to recover the damages that the plaintiffs have and will suffer as a result of the violations.

**PARTIES**

2. The plaintiff Dahl Automotive Onalaska Inc. dba Dahl Lincoln is a Wisconsin corporation with its principal place of business at 561 Theater Road, Onalaska, WI 54650.

3. The plaintiff Garbo Motor Sales, Inc. dba Garbo Lincoln is a Wisconsin corporation with its principal place of business at 3077 Douglas Avenue, Racine, WI 53402.

4. The plaintiff Griffin Ford Lincoln Fort Atkinson, Inc. is a Wisconsin corporation with its principal place of business at 1642 Janesville Avenue, Fort Atkinson, WI 53538.

5. The plaintiff Jim Olson Ford Lincoln, LLC is a Wisconsin limited liability company with its principal place of business at 440 South Duluth Avenue, Sturgeon Bay, WI 54235.

6. The plaintiff Kayser Ford, Inc. dba Kayser Lincoln is a Wisconsin corporation with its principal place of business at 2303 West Beltline Highway, Madison, WI 53713.

7. The plaintiff Kunes Country Ford-Lincoln, Inc. is a Wisconsin corporation with its principal place of business at 1234 E. Geneva Street, Delavan, WI 53115.

8. The plaintiff Lidtke Motors, Inc. is a Wisconsin corporation with its principal place of business at 701 Park Avenue, Beaver Dam, WI 53916.

9. The plaintiff The Motor Company, Inc. dba Lincoln of Marinette is a Wisconsin corporation with its principal place of business at W1680 US Highway 41, Marinette, WI 54143.

10. The plaintiff Uptown Motors, Inc. is a Wisconsin corporation with its principal place of business at 2111 N. Mayfair Road, Milwaukee, WI 53226.

11. The plaintiff V & H Automotive, Inc. is a Wisconsin corporation with its principal place of business at 2414 North Central Avenue, Marshfield, WI 54449.

12. The plaintiff Y & D Corp. dba Dorsch Lincoln is a Wisconsin corporation with its principal place of business at 2641 Eaton Road, Green Bay, WI 54311.

13. The defendant Ford Motor Company dba Lincoln Motor Company ("Lincoln") is a Delaware corporation with its principal place of business at One American Road, Dearborn, Michigan 48126.

**JURISDICTION AND VENUE**

14. The Court has subject matter jurisdiction over all claims made in this action pursuant to 28 U.S.C. § 1332 pursuant to the following facts:

   a. Each plaintiff is organized under the laws of the State of Wisconsin, and has its principal place of business in the State of Wisconsin.

   b. Each plaintiff is a citizen of the State of Wisconsin for purposes of 28 U.S.C. § 1332.

4

    c. Lincoln is a Delaware corporation with its principal place of business located in Dearborn, Michigan. Lincoln is a citizen of the States of Delaware and Michigan and is not a citizen of the State of Wisconsin.

    d. Complete diversity of citizenship exists between plaintiffs and Lincoln for purposes of 28 U.S.C. § 1332.

    e. More than $75,000 is in controversy in this action. Each plaintiff will suffer losses in excess of $75,000, in the form of increased costs and loss of sales, if Lincoln is allowed to increase the prices that the plaintiffs are required to pay for vehicles purchased from Lincoln as alleged in this Complaint.

15. The Court has subject matter jurisdiction over the plaintiffs' claims arising under the federal Robinson-Patman Act under 28 U.S.C. § 1331.

16. The Court also has subject matter jurisdiction over the plaintiffs' claims arising under the Robinson-Patman Act under 28 U.S.C. § 1337(a).

17. The Court has supplemental jurisdiction over the plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims are so related to the claims under the federal statutes as to form part of the same case or controversy.

18. Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this district.

**FACTS RELEVANT TO ALL CLAIMS**

19. Each of the plaintiffs is licensed as a motor vehicle dealer under the provisions of Wis. Stat. §§ 218.0101, et seq.

20. Lincoln is licensed as a motor vehicle manufacturer or distributor under the provisions of Wis. Stat. §§ 218.0101, et seq.

5

21. As a licensed motor vehicle manufacturer or distributor in Wisconsin, Lincoln has agreed to subject itself to all provisions of the Wisconsin statutes regulating motor vehicle manufacturers, importers and distributors. Wis. Stat. § 218.0114(2m).

22. Each of the plaintiffs has been granted a franchise by Lincoln to buy, sell, distribute and service the Lincoln line make of motor vehicles pursuant to a Lincoln Dealer Sales and Service Agreement ("Dealer Agreement") between the plaintiff and Lincoln.

23. Lincoln is a division of Ford Motor Company which also manufactures and distributes the Ford line make of motor vehicles.

24. Most, but not all, of the plaintiffs have franchises from Ford Motor Company to buy, sell, distribute and service the Ford line make of motor vehicles, in addition to Lincoln.

25. Under the Dealer Agreement, each plaintiff has the right to buy Lincoln vehicles from Lincoln for resale.

26. For each vehicle that a plaintiff purchases from Lincoln, it pays to Lincoln an invoice price established by Lincoln. The invoice price is the same for all Lincoln dealers.

27. After the plaintiff sells a vehicle purchased from Lincoln, Lincoln returns to the plaintiff a percentage of the vehicle's manufacturer's suggested retail price (MSRP) which it terms the dealer's "margin." Upon its receipt by the dealer, the "margin" effectively reduces the price that the dealer pays Lincoln for the vehicle.

28. From 2012 until July 1, 2020, the margin that each plaintiff received from Lincoln for each vehicle that it purchased and resold was equal to 5.75% of the vehicle's MSRP.

29. In July 2019, Lincoln announced a program for Lincoln dealers that it calls the "2020 Lincoln Commitment Program" ("LCP"). Phase I of the LCP commenced on January 1, 2020. The LCP contains several performance standards that a Lincoln dealer must meet in order

6

to retain the maximum 5.75% of MSRP margin per vehicle bought and resold. These include non-facility performance standards pertaining to websites, software, pickup and delivery services, service loaners and courtesy vehicle programs, rewards programs, car washes, certified pre-owned program, staffing and training requirements. While some of these non-facility standards are of questionable value given their cost, they are not being challenged in this action.

30. The LCP also included a requirement that a Lincoln dealer must enter into a Letter of Understanding ("LOU") with Lincoln on or before June 30, 2020, under which LOU the dealer agreed to construct an Exclusive Lincoln Vitrine Facility.

31. With certain exceptions, a dealer that did not, by June 30, 2020, sign a LOU agreeing to comply with the Exclusive Lincoln Vitrine Facility standard had its margin reduced. The amount and timing of the reduction depended on which of the following categories the dealer currently falls: (a) Certified Lincoln Exclusive; (b) Certified Dual; (c) Non-Certified Lincoln Exclusive; or (d) Non-Certified Dual.

32. A Certified Lincoln Exclusive Dealer is a dealer presently having an exclusive Lincoln sales facility that has been certified by Lincoln as meeting its existing facility standard. A Certified Lincoln Exclusive Dealer that does not agree to comply with the Exclusive Lincoln Facility Standard will not have its margin reduced for that reason.

33. A Certified Dual dealer is one that displays and sells both Lincoln and Ford vehicles in a facility that has been certified by Lincoln as meeting its existing dual facility standard. A Certified Dual dealer that did not, by June 30, 2020, sign a LOU agreeing to comply with the Exclusive Lincoln Vitrine Facility, had its margin reduced by 1.75 percentage points effective for vehicles purchased on and after July 1, 2020, and will have its margin reduced by another 1.0 percentage points, for a total margin reduction of 2.75 percentage points, for vehicle

purchased beginning in 2022.  Certain Certified Dual dealers have had the deadline for signing the LOU and incurring the initial 1.75 percentage point margin reduction, extended to December 31, 2020 because of the COVID-19 pandemic.

34.     Dealers who are Non-Certified Lincoln Exclusive or Non-Certified Dual who did not, by June 30, 2020, sign a LOU agreeing to comply with the Exclusive Lincoln Vitrine Facility standard, had their margin reduced by 2.75 percentage points effective for vehicles purchased on and after July 1, 2020.

35.     None of the plaintiffs are Certified Lincoln Exclusive dealers, while some are Certified Dual dealers and some are Non-Certified Dual or Non-Certified Exclusive dealers.

36.     The reduction in margin that Lincoln has imposed on Certified Dual, Non-Certified Dual and Non-Certified Exclusive dealers that have not complied with the Exclusive Lincoln Vitrine Facility standard is competitively significant.  On a Lincoln vehicle with a $60,000 MSRP, a 1.75 percentage point reduction in margin means that the net price that a dealer pays for the vehicle is increased by $1,050, and a 2.75 percentage point reduction in margin means that the net price that a dealer pays for the vehicle will be increased by $1,650.

37.     The retail market for vehicles such as Lincoln is extremely competitive with low profit margins, and, therefore, even a few hundred dollars difference in the price that a franchised dealer pays its manufacturer for a vehicle is competitively significant.

38.     The estimated cost of complying with the Exclusive Lincoln Vitrine Facility standard varies between one and four million dollars for the plaintiffs.  In the case of each of the plaintiffs, the cost of compliance greatly exceeds any benefit to the dealer or its customers, and it is not commercially reasonable for the plaintiff to incur those costs given the relatively low potential for Lincoln vehicle sales in their respective markets and the extreme unlikelihood that

8

compliance with the standard will generate additional sales and revenues sufficient to recover those costs.  For example, one of the plaintiffs has calculated that compliance with the Exclusive Lincoln Vitrine Facility standard would reduce its new vehicle department gross profits by nearly 90%, even assuming a 10% increase in new Lincoln vehicle sales, an assumption that is not supported by any credible evidence.

39. The Exclusive Lincoln Vitrine Facility standard cannot be justified by Lincoln based on a need for expansion of the plaintiff's facilities to provide adequate space for Lincoln dealer operations.  Each of the plaintiffs is already providing Lincoln with facilities that meet Lincoln's size requirements for sales, service and parts based on the planning potential for Lincoln vehicles in their respective markets.  On the contrary, moving Lincoln operations from the Dealers' existing facilities into an Exclusive Vitrine Facility will result in excess capacity and stranded investment for which the plaintiff will receive no return and increased costs that will need to be passed on to their customers.

40. The Exclusive Lincoln Vitrine Facility standard also cannot be justified by Lincoln based on a need for modernization of the plaintiffs' facilities.  While Lincoln is entitled to have its vehicles sold and serviced in clean and modern facilities, the plaintiffs' facilities are already clean and modern due to substantial investments they have made to comply with Lincoln's pre-existing facility standards.

41. The Exclusive Lincoln Vitrine Facility standard also cannot be justified based on a showing that it will result in greater sales of Lincoln products and service.  There are no data which show that standardization of exclusive facilities for a motor vehicle brand results in significantly greater sales of vehicles, parts or service for that brand.

9

42. The importance of facilities in the marketing of motor vehicles is diminished by a trend toward online shopping and buying of vehicles.

43. Any expectation that compliance with the Exclusive Lincoln Vitrine Facility standard will produce more sales to cover the cost of compliance is also negated by the fact that Lincoln has recently discontinued production of its MKZ and Continental models and cancelled plans for an electric vehicle, leaving Lincoln dealers with only four models to sell. By comparison, other luxury brands with which Lincoln competes offer their dealers a minimum of six models up to at least twelve models to sell.

44. Each of the plaintiffs has already incurred significant costs in providing facilities to comply with facility standards that previously have been imposed on them by Lincoln. In several cases, the plaintiff has incurred these costs quite recently and has yet to recover the investment made in doing so. Some of these costs were for the installation of design elements that would be replaced by different design elements required to comply with the Exclusive Lincoln Vitrine Facility standard.

45. Some of the plaintiffs do not have room at their current locations on which to construct an Exclusive Lincoln Vitrine Facility, and in order for these plaintiffs to comply with the Exclusive Lincoln Vitrine Facility standard, they would need to either acquire additional land or tear down existing buildings at their current location.

46. Most of the plaintiffs that are Certified Dual dealers acquired their Lincoln franchise to operate in the same showroom as their Ford franchise and made significant investments to do so, with the encouragement of Lincoln. Several years ago, Lincoln vehicles were largely sold and serviced in facilities dedicated exclusively to the Lincoln brand. Beginning in approximately 2007, Lincoln encouraged the merger of the Ford and Lincoln

brands into one facility with, in some cases, corresponding expansions to accommodate both brands, presumably under the theory that consolidation of the brands in one facility would make the dealerships' sales and service operations more efficient and allow the brands to be sold and serviced at a lower cost to Ford and Lincoln owners. While Lincoln has now abandoned this theory in favor of creating an image of exclusivity for the Lincoln brand, there is no guarantee that it will not revert to favoring efficiency over image in the future, before dealer investments in complying with the Exclusive Lincoln Vitrine Facility standard are recovered.

## FIRST CLAIM

## VIOLATION OF WIS. STAT. § 218.0116(1)(vm)

47. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

48. Wis. Stat. § 218.0116(1)(vm) prohibits a licensed motor vehicle manufacturer or distributor such as Lincoln from coercing or attempting to coerce a dealer to improve its dealership facilities at a substantial cost to the dealer, unless the technology of a motor vehicle or the reasonable business considerations of the manufacturer and dealer justify the facility improvement. The burden of demonstrating technological necessity or business justification is on the manufacturer or distributor.

49. By significantly increasing the price that plaintiffs will be required to pay Lincoln for vehicles if they do not comply with Lincoln's Exclusive Lincoln Vitrine Facility standard, Lincoln is coercing or attempting to coerce the plaintiffs to improve their dealership facilities at a substantial cost to the plaintiffs.

50. There are no technological necessity or reasonable business considerations of the manufacturer and dealer to justify these improvements.

51. Accordingly, Lincoln's reduction of the plaintiffs' margins, thereby significantly increasing the net price that the plaintiffs must pay for vehicles purchased from Lincoln, unless they comply with Lincoln's Exclusive Lincoln Vitrine Facility standard, violates Wis. Stat. § 218.0116(1)(vm), and is causing each of the plaintiffs to suffer substantial and continuing pecuniary loss.

52. Lincoln's violation of Wis. Stat. § 218.0116(1)(vm) is "willful" within the meaning of Wis. Stat. § 218.0163(1m) and, therefore, entitles each plaintiff to recover damages in an amount equal to three times the pecuniary loss caused it by such violation.

## SECOND CLAIM

## VIOLATION OF WIS. STAT. § 218.0116(1)(wm)

53. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

54. Wis. Stat. § 218.0116(1)(wm) prohibits a licensed motor vehicle manufacturer or distributor such as Lincoln from unreasonably coercing or attempting to coerce a dealer to provide exclusive facilities for a particular line make of motor vehicles. The burden of proof to demonstrate the reasonableness of the provision of exclusive facilities is on the manufacturer or distributor.

55. By significantly increasing the price that plaintiffs will be required to pay Lincoln for vehicles if they do not comply with Lincoln's Exclusive Lincoln Vitrine Facility, Lincoln is coercing or attempting to coerce the plaintiffs to provide exclusive facilities for Lincoln vehicles without having a reasonable basis for doing so.

56. Accordingly, Lincoln's reduction of the plaintiffs' margins, thereby significantly increasing the price that the plaintiffs must pay for vehicles purchased from Lincoln, unless they

12

comply with Lincoln's Exclusive Lincoln Vitrine Facility Standard, violates Wis. Stat. § 218.0116(1)(wm), and is causing each of the plaintiffs to suffer substantial and continuing pecuniary loss.

57. Lincoln's violation of Wis. Stat. § 218.0116(1)(wm) is "willful" within the meaning of Wis. Stat. § 218.0163(1m) and, therefore, entitles each plaintiff to recover damages in an amount equal to three times the pecuniary loss caused it by such violation.

### THIRD CLAIM

### VIOLATION OF WIS. STAT. § 218.0116(1)(z)

58. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

59. Wis. Stat. § 218.0116(1)(z) prohibits a licensed motor vehicle manufacturer or distributor such as Lincoln from directly or indirectly taking or threatening to take an adverse action, including, without limitation, increasing the price charged the dealer for vehicles or withholding an incentive or other payment from the dealer, in retaliation for the dealer exercising a right or remedy granted to it under Wis. Stat. §§ 218.0101 to 218.01163.

60. By significantly increasing the price that plaintiffs are required to pay Lincoln for vehicles because they do not comply with Lincoln's Exclusive Lincoln Vitrine Facility standard, Lincoln is violating Wis. Stat. § 218.0116(1)(z), because the price increase is a direct or indirect result of the plaintiffs' exercising their rights under Wis. Stat. §§ 218.0116(1)(vm) and (wm) not to be coerced into making unjustified facility improvements at a significant cost to the plaintiffs or into providing exclusive facilities for Lincoln vehicles.

61. Accordingly, Lincoln's reduction of the plaintiffs' margins, thereby significantly increasing the price that the plaintiffs must pay for vehicles purchased from Lincoln, unless they

comply with Lincoln's Exclusive Lincoln Vitrine Facility Standard, violates Wis. Stat. § 218.0116(1)(z), and is causing each of the plaintiffs to suffer substantial and continuing pecuniary loss.

62. Lincoln's violation of Wis. Stat. § 218.0116(1)(z) is "willful" within the meaning of Wis. Stat. § 218.0163(1m) and, therefore, each of the plaintiffs is entitled to recover damages in an amount equal to three times the pecuniary loss caused it by the violation.

## FOURTH CLAIM

### VIOLATIONS OF WIS. STAT. §§ 218.0124 and 218.0116(1)(km)

63. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

64. Wis. Stat. § 218.0124 prohibits a licensed motor vehicle manufacturer or distributor such as Lincoln from imposing any "performance standard" that may have a material effect on a dealer unless the standard, and the application of the standard to a particular dealer, are "fair, reasonable and equitable."

65. A violation of Wis. Stat. § 218.0124 is also a violation of Wis. Stat. § 218.0116(1)(km), which incorporates Wis. Stat. § 218.0124.

66. Lincoln's Exclusive Lincoln Vitrine Facility standard is a "performance standard" within the meaning of Wis. Stat. § 218.0124.

67. Lincoln's Exclusive Lincoln Vitrine Facility standard is not a "fair, reasonable and equitable" performance standard, either on its face or as applied to any of the plaintiffs. Among other things, it is not commercially reasonable for the plaintiffs to comply with that standard because the costs of doing so greatly outweigh any benefits.

68. Lincoln's Exclusive Lincoln Vitrine Facility standard has a material effect on each of the plaintiffs because the plaintiff's failure to meet the standard is requiring it to pay significantly more for vehicles purchased from Lincoln than would otherwise be the case.

69. Accordingly, Lincoln's reduction of the plaintiffs' margins, thereby significantly increasing the price that the plaintiffs must pay for vehicles purchased from Lincoln, unless they comply with Lincoln's Exclusive Lincoln Vitrine Facility standard, violates Wis. Stat. §§ 218.0124 and 218.0116(1)(km), and is causing each of the plaintiffs to suffer substantial and continuing pecuniary loss.

70. Lincoln's violation of Wis. Stat. §§ 218.0124 and 218.0116(1)(km) is "willful" within the meaning of Wis. Stat. § 218.0163(1m) and, therefore, each of the plaintiffs is entitled to recover damages in an amount equal to three times the pecuniary loss caused by the violation.

### FIFTH CLAIM

### VIOLATION OF SECTION 2-305(2) OF THE UNIFORM COMMERCIAL CODE

71. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

72. Under section 2-305(2) of the Uniform Commercial Code, which has been enacted in both Wisconsin and Michigan, Lincoln has a duty to fix "in good faith" the prices the plaintiffs pay for vehicles they purchase from Lincoln.

73. Lincoln's act of increasing the prices that the plaintiffs must pay for vehicles they purchase from Lincoln, unless they comply with Lincoln's commercially unreasonable Exclusive Lincoln Vitrine Facility standard, fails to comply with the "good faith" requirement imposed by Section 2-305(2).

74. Lincoln's breach of its duty of "good faith" in fixing the prices the plaintiffs pay it for vehicles purchased under their Dealer Agreements is causing and will continue to cause the plaintiffs to suffer damages in an as yet undetermined amount.

## SIXTH CLAIM

## VIOLATION OF THE ROBINSON-PATMAN ACT

75. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

76. Lincoln manufactures and sells Lincoln vehicles in interstate commerce to franchised Lincoln dealers, including the plaintiffs.

77. Some or all of the vehicles that Lincoln sells to the plaintiffs and their intrabrand Lincoln dealer competitors cross state lines between the time of their manufacture and their delivery to plaintiffs and those competitors.

78. The plaintiffs compete with Lincoln dealers whose markets and other circumstances make it commercially reasonable for them to comply with Lincoln's Exclusive Lincoln Vitrine Facility standard and, therefore, allows them to avoid the reduction in margin and resulting price increase that Lincoln is imposing on Lincoln dealers that do not comply with that standard.

79. The price increase that Lincoln is imposing on dealers that do not comply with its Exclusive Lincoln Vitrine Facility standard causes the net prices that the plaintiffs pay Lincoln for vehicles to be substantially higher than the prices that certain of plaintiffs' intrabrand competitors are paying Lincoln in contemporaneous purchases of vehicles of like grade and quality from Lincoln.

80. Because it is not commercially reasonable for any of the plaintiffs to comply with the Exclusive Lincoln Vitrine Facility standard, the more favorable prices that Lincoln is providing to the plaintiffs' intrabrand competitors that do have Exclusive Lincoln Vitrine Facilities, are not functionally available to the plaintiffs.

81. The price difference created by the price increase that Lincoln is imposing on the plaintiffs for not complying with its Exclusive Lincoln Vitrine Facility standard is not only substantial but will likely be in effect over a substantial period of time given that Lincoln's LCP has no termination date. This substantial price difference over a significant period of time creates a reasonable possibility of competitive injury and, therefore, is a violation of Section 13(a) of the Robinson-Patman Act (15 U.S.C. § 13(a)).

82. In addition, the substantial price difference between the purchases of vehicles that the plaintiffs make from Lincoln and the purchases that certain of their intrabrand competitors make of vehicles of like grade and quality is likely to cause a significant number of retail vehicle sales to be diverted from the plaintiffs to their favored intrabrand competitors.

83. The diversion of sales from the plaintiffs to their favored intrabrand competitors caused by Lincoln's price discrimination constitutes antitrust injury caused by Lincoln's violation of 15 U.S.C. § 13(a).

84. As a direct result of Lincoln's violation of 15 U.S.C. § 13(a), the plaintiffs will sustain injury to their business and property for which they are entitled to recover treble damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 15(a).

## SEVENTH CLAIM FOR RELIEF

## VIOLATION OF WIS. STAT. § 133.04

85. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

86. Lincoln's aforesaid price discrimination also violates Wis. Stat. § 133.04 in that it is undertaken for the purpose or intent of injuring the plaintiffs' ability to compete in selling of Vehicles purchased from Lincoln in retaliation for their exercising their legal right not to be coerced into providing costly exclusive dealership facilities for Lincoln vehicles that are neither commercially reasonable nor justified by business considerations of Lincoln and the plaintiffs.

87. Pursuant to Wis. Stat. § 133.18, the plaintiffs are entitled to recover three times the damages sustained by them as a result of Lincoln's violation of Wis. Stat. § 133.04, and the cost of the suit, including reasonable attorney fees.

## EIGHTH CLAIM FOR RELIEF

## PRELIMINARY AND PERMANENT INJUNCTION

88. The plaintiffs restate the allegations set forth in the preceding paragraphs of this complaint.

89. Unless enjoined, Lincoln's threats and acts, as alleged in the preceding paragraphs of this complaint, will cause irreparable harm to plaintiffs and leave them without an adequate remedy at law.

WHEREFORE, the plaintiffs request judgment on their claims for relief as follows:

A. Awarding each of the plaintiffs damages equal to three times the actual pecuniary loss caused by Lincoln's willful violation of Wis. Stat. § 218.0116(1)(vm), or, in the alternative,

for the actual pecuniary loss caused by such violation, together with its actual costs including reasonable attorney fees, as provided by Wis. Stat. § 218.0163(1)(a) and (1m).

B. Awarding each of the plaintiffs damages equal to three times the actual pecuniary loss caused by Lincoln's willful violation of Wis. Stat. § 218.0116(1)(wm), or, in the alternative, for the actual pecuniary loss caused by such violation, together with its actual costs including reasonable attorney fees, as provided by Wis. Stat. § 218.0163(1)(a) and (1m).

C. Awarding each of the plaintiffs damages equal to three times the actual pecuniary loss caused by Lincoln's willful violation of Wis. Stat. § 218.0116(1)(z), or, in the alternative, for the actual pecuniary loss caused by such violation, together with its actual costs including reasonable attorney fees, as provided by Wis. Stat. § 218.0163(1)(a) and (1m).

D. Awarding each of the plaintiffs damages equal to three times the actual pecuniary loss caused by Lincoln's willful violation of Wis. Stat. §§ 218.0124 and 218.0116(1)(km), or, in the alternative, for the actual pecuniary loss caused by such violation, together with its actual costs including reasonable attorney fees, as provided by Wis. Stat. § 218.0163(1)(a) and (1m).

E. Awarding each of the plaintiffs damages caused by Lincoln's violation of its duty under Section 2-305(2) of the Uniform Commercial Code to fix in good faith the price that the plaintiffs pay Lincoln for vehicles.

F. Awarding each of the plaintiffs three times the damages caused by Lincoln's violation of 15 U.S.C. § 13(a), plus their costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 15(a).

G. Awarding each of the plaintiffs three times the damages caused by Lincoln's violation of Wis. Stat. § 133.04, plus their costs and reasonable attorney's fees, pursuant to Wis. Stat. § 133.18.

H.   Awarding the plaintiffs preliminary and permanent injunctions enjoining Lincoln from increasing the prices that plaintiffs must pay for vehicles purchased from Lincoln in retaliation for the plaintiffs not complying with Lincoln's Exclusive Lincoln Vitrine Facility standard.

## MEDIATION

Pursuant to Wis. Stat. § 218.0136, the plaintiffs have previously demanded that Lincoln engage in good faith mediation of this dispute and that mediation has occurred without resolution of the dispute.

## JURY DEMAND

**PLAINTIFFS DEMAND A TRIAL BY JURY WITH REGARD TO ALL ISSUES FOR WHICH TRIAL BY JURY IS ALLOWED.**

Dated this 6th day of October, 2020.

BOARDMAN & CLARK LLP
By:

*/s/ Paul R. Norman*
Paul R. Norman - State Bar No. 1013662
Barry J. Blonien - State Bar No. 1078848
Sarah J. Horner – State Bar No. 1113185
1 South Pinckney Street, Suite 410
P.O. Box 927
Madison, WI  53701-0927
Phone: (608) 257-9521
Fax: (608) 283-1709
Attorneys for Plaintiffs

F:\DOCS\WD\41009\1DRA\A3780102.DOCX