# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAHL AUTOMOTIVE ONALASKA INC., GARBO MOTOR SALES, INC.,  GRIFFIN FORD LINCOLN FORT ATKINSON, INC., JIM OLSON FORD LINCOLN, LLC, KAYSER FORD, INC.,  KUNES COUNTRY FORD-LINCOLN, INC., LIDTKE MOTORS, INC.,  THE MOTOR COMPANY, INC., UPTOWN MOTORS, INC., V & H AUTOMOTIVE, INC., and Y & D CORP., | Case No. 3:20-cv-00932 |

Plaintiffs,

vs.

FORD MOTOR COMPANY,

Defendant.

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Ford Motor Company ("Ford") is entitled to summary judgment in its favor on all of the claims in Plaintiffs'[1] Amended Complaint because they are all premised upon two factually erroneous assertions: 1) that the Lincoln Commitment Program ("LCP") changes the prices at which vehicles are sold to the Plaintiff dealers by Ford; and 2) that the LCP is a performance standard on which dealers are measured.  Discovery, and the Plaintiffs themselves, have confirmed what Ford has asserted from the beginning – that neither of these allegations are true. As all of Plaintiffs' claims are dependent upon one of these two erroneous assertions, the claims all necessarily fail, and Ford is entitled to summary judgment in its favor.

---

[1] Plaintiffs Dahl Automotive Onalaska Inc., Garbo Motor Sales, Inc., Griffin Ford Lincoln Fort Atkinson, Inc., Kayser Ford, Inc., The Motor Company, Inc., Uptown Motors, Inc., and V&H Automotive are withdrawing their claims against Ford. *The four remaining Plaintiffs are Jim Olson Ford Lincoln, LLC, Kunes Country Ford-Lincoln, Inc., Lidtke Motors, Inc. and Y&D Corp.*

## BACKGROUND

This matter concerns the Lincoln Commitment Program ("LCP"), which is a program Ford offers to its Lincoln dealers.  (M. DeYoung Dec. p. 2. ¶ 6.)  Participation is optional. (M. DeYoung Dec. p. 3, 6, ¶¶ 20, 24, 43.)   The LCP sets in place a series of customer-facing amenities such as car washes and loaner vehicles, and provides a payment to participating Lincoln dealers to help offset the costs of providing those items.  (M. DeYoung Dec. p. 2. ¶¶ 6, 7, 8.)  Beginning in 2020, the LCP added an optional facility element.  (S. McDermott Dec. p. 2, 3 ¶¶ 19, 20, 22); (M. DeYoung Dec. p. 5, 6, ¶¶ 30, 43).   Dealerships that had incurred costs in investing in Lincoln exclusivity, or who committed to do so, have the opportunity to receive offsets on some of those costs.  (S. McDermott Dec. p. 2, 3 ¶¶ 19, 20, 22.)  The offsets, under the LCP associated with the facility portion, are calculated based upon 1 to 2.75% of the Manufacturer's Suggested Retail Price ("MSRP") based on new vehicle sales to retail customers. (S. McDermott Dec. p. 2, 3 ¶¶ 19, 20, 22); (M. DeYoung Dec. p. 2. ¶ 8).  The LCP does not change the price at which a vehicle is sold to dealers in any manner.  (M. DeYoung Dec. p. 2. ¶ 15.)  All dealers pay the invoice price when they purchase a vehicle from Lincoln, and this price is the same for all dealers.   (M. DeYoung Dec. p. 2. ¶ 16); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23, 9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch Dep. 31:15-19, 9/23/2021). The MSRP is not the invoice price a Lincoln dealer pays for a vehicle when it buys it from Lincoln.  (M. DeYoung Dec. p. 2. ¶ 14); (D. Dorsch Dep. 42:19-43:19, 9/15/2021); (J. Olson Dep. 41:7-14, 9/27/2021); (T. Welch Dep. 30:15-19, 9/23/2021); (T. Fohr Dep. 50:2-7 9/29/2021).

Plaintiffs are Lincoln dealers.  (D. Dorsch Dep. 13:7-14:20, 9/15/2021); (J. Olson Dep. 11:2-12:10, 9/27/2021;) (T. Fohr Dep. 8:22-9:20, 9/29/2021); (T. Welch Dep. 8:18-23, 14:25-

15:1, 9/23/2021).  Each has chosen to not fully participate in the facility portion of the LCP. (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021).  Each is free to make that choice. (D. Dorsch Dep. 46:21-47:1); (J. Olson Dep. 50:3-8, 9/27/2021); (T. Fohr Dep. 43:3-8, 9/29/2021); (T. Welch Dep. 27:1-2, 9/23/2021);  (M. DeYoung Dec. p. 6, ¶¶ 43-47);  (S. McDermott Dec. p. 3 ¶¶ 20, 23-26).  Each chose to not participate in the facility portion of the LCP based upon its own business decision to avoid the associated costs, which can be millions of dollars.  (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021); (S. McDermott Dec. p. 1, ¶ 7).  Each plaintiff is free to make that choice, and each is free to continue operating from its existing facility.  (D. Dorsch Dep. 13:13-15, 93:7-17, 46:21-47:1); (J. Olson Dep. 23:7-10. 50:3-8, 9/27/2021); (T. Fohr Dep. 43:3-8, 53:19-23, 9/29/2021); (T. Welch Dep. 27:1-2, 50:13-21, 9/23/2021);  (M. DeYoung Dec. p. 6, ¶¶ 43-47); (S. McDermott Dec. p. 3 ¶¶ 20, 23-26).  The LCP, again, is optional, and is not a performance standard on which Plaintiffs are measured.  (M. DeYoung Dec. p. 5, 6, ¶¶ 37, 43.)

## STANDARD OF DECISION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## ARGUMENT

### I.   FORD IS ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS IN PLAINTIFF'S AMENDED COMPLAINT.

Ford is entitled to summary judgment in its favor on all of the claims in Plaintiffs' Amended Complaint.  All but one of Plaintiffs' claims require that vehicles be sold to the

Plaintiffs at different prices than their competitors – yet Plaintiffs have all conceded that they pay the same prices for vehicles. Plaintiffs' remaining claim requires that the LCP be a "performance standard," but that claim also fails because all of the Plaintiffs concede it is an optional program; not something under which they are measured against other dealers. As Plaintiffs cannot establish these essential elements of their claims, Ford is entitled to summary judgment in its favor.

### A.   Ford is Entitled To Summary Judgment In Its Favor On Count I – Violation of Wis. Stat. § 218.0116(1)(vm).

Ford is entitled to Summary Judgment in its favor on Count I – Violation of Wis. Stat. § 218.0116(1)(vm) because the LCP does not change the price at which vehicles are sold to dealers, nor does it require any dealer to make changes to its facility. Wis. Stat. § 218.0116(1)(vm) states, in relevant part, that it is unlawful to be an auto manufacturer that:

> coerces or attempts to coerce a dealer or prospective dealer to improve dealership facilities at a substantial cost to the dealer or prospective dealer. This paragraph does not prohibit improvement of dealership facilities at a substantial cost to the dealer or prospective dealer if the dealer or prospective dealer has agreed to undertake the improvement and received a separate and valuable consideration for the improvement . . .

Wis. Stat. § 218.0116(1)(vm).

Plaintiffs allege that Ford has engaged in coercive activity by "increasing the price that plaintiffs pay Lincoln for vehicles." (Dkt. 23, Am. Compl. ¶ 61.) Plaintiffs also allege that Lincoln is "impos[ing] facility requirements" on them (Dkt. 23, Am. Compl. ¶ 62) and that Lincoln is "threatening termination" if they do not build a Vitrine. (*Id.*)

Discovery has confirmed, however, that none of these allegations are true. The LCP does not change the price a dealer pays for a vehicle. (M. DeYoung Dec. p. 2. ¶ 15.) Plaintiffs concede that all dealers pay the same price for vehicles when they purchase them from Ford. (M. DeYoung Dec. p. 2. ¶ 16); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23,

9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch Dep. 31:15-19, 9/23/2021). The LCP is available to all dealers and is the same for all dealers. (M. DeYoung Dec. p. 5, 6, ¶¶ 31, 43.) The 2.75% facility portion of the LCP is designed to help participating dealers offset their costs associated with building and operating an exclusive store. (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22.) All of the Plaintiffs concede that they are eligible to participate in the LCP. (D. Dorsch Dep. 93:18-93:24, 9/15/2021); (Olson Dep. 57:14-20, 9/27/2021); (T. Fohr Dep. 51:14-17, 9/29/2021); (T. Welch Dep. 52:1-3, 9/23/2021). Plaintiffs also concede that, despite being eligible, they have chosen to not participate in the facility portion because they do not want to incur the costs. (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021); *see also* (S. McDermott Dec. p. 1, ¶ 7). Thus, Plaintiffs are not incurring any of the costs the 2.75% LCP payment is designed to help offset. (*Id.*); (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22). Plaintiffs concede that they are not being required to build a Vitrine, and that they are free to continue operating as Lincoln dealers in their existing stores. (D. Dorsch Dep. 13:13-15, 93:7-17); (J. Olson Dep. 47:18-25, 9/27/2021); (T. Fohr Dep. 53:19-23, 9/29/2021); (T. Welch Dep. 80:3-6, 9/23/2021). As the LCP is optional, dealers who do not participate are not at risk of termination. (*See id.*); (M. DeYoung Dec. p. 5, 6, ¶¶ 35, 43).

The LCP does not violate Wis. Stat. § 218.0116(1)(vm). It does not change prices, it does not threaten termination, and it does not coerce a dealer to make facility upgrades. Besides, the participating dealers would still receive offsets as "received a separate and valuable consideration for the improvement," and thus even if the LCP was somehow governed by Wis. Stat. § 218.0116(1)(vm), it would be permitted by virtue of that exception.

**B.**     **Ford is Entitled To Summary Judgment In Its Favor On Count II – Violation of Wis. Stat. § 218.0116(1)(wm).**

Ford is entitled to Summary Judgment in its favor on Count II – Violation of Wis. Stat. § 218.0116(1)(wm) because the LCP does not change the price at which vehicles are sold to dealers, nor does it require any dealer to make changes to its facility or have an exclusive facility.   Wis. Stat. § 218.0116(1)(wm) states, in relevant part, that it is unlawful to be a manufacturer that:

> unreasonably requires or coerces or attempts to coerce a dealer to provide or maintain exclusive facilities for a particular line make of motor vehicles or unreasonably refuses to permit or approve the addition of another line make to the dealership facilities of a dealer taking into consideration the reasonable business considerations of the manufacturer, importer, or distributor and the dealer.

Wis. Stat. § 218.0116(1)(vm).

Plaintiffs allege, again, that Ford has engaged in coercive activity by "increasing the price that plaintiffs pay Lincoln for vehicles."  (Dkt. 23, Am. Compl. ¶ 68.)  Plaintiffs further allege that they are being required to provide exclusive facilities.  (Dkt. 23, Am. Comp. 67.)

As noted above, the LCP does not change the price a dealer pays for a vehicle.  (M. DeYoung Dec. p. 2. ¶ 15.)  Plaintiffs concede that all dealers pay the same price for vehicles when they purchase them from Ford.  (M. DeYoung Dec. p. 2. ¶ 16); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23, 9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch Dep. 31:15-19, 9/23/2021).  The LCP is available to all dealers and is the same for all dealers. (M. DeYoung Dec. p. 5, 6, ¶¶ 31, 43.)  The 2.75% facility portion of the LCP is designed to help participating dealers offset their costs associated with building and operating an exclusive store. (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22.)  Plaintiffs concede that they have chosen to not incur those costs.  (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9,

9/23/2021); *see also* (S. McDermott Dec. p. 1, ¶ 7). Thus, Plaintiffs are not incurring any of the costs the 2.75% LCP payment is designed to help offset. (*Id.*); (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22). Plaintiffs concede that they are not being required to build a Vitrine, and that they are free to continue operating from their existing stores. (D. Dorsch Dep. 13:13-15, 93:7-17); (J. Olson Dep. 47:18-25, 9/27/2021); (T. Fohr Dep. 53:19-23, 9/29/2021); (T. Welch Dep. 80:3-6, 9/23/2021).

The LCP does not violate Wis. Stat. § 218.0116(1)(wm). It does not change prices, and therefore the LCP necessarily does not and cannot use this phantom "price change" to "coerce" the Plaintiff dealers into providing exclusive facilities. Moreover, Dorsch, Olson, and Kunes all conceded that they are free to continue operating their current stores, which are dualed with Ford. (*Id.*) Dorsch also has a Kia store under the same roof and concedes that it is free to continue operating from that facility.[2] (D. Dorsch Dep. 13:13-15, 93:7-17. 915/2021.)

**C.    Ford is Entitled To Summary Judgment In Its Favor On Count III – Violation of Wis. Stat. § 218.0116(1)(z).**

Ford is entitled to Summary Judgment in its favor on Count III – Wis. Stat. § 218.0116(1)(z) because the LCP does not change the price at which vehicles are sold to dealers. Wis. Stat. § 218.0116(1)(z) states, in relevant part, that it is unlawful for a manufacturer to take an "adverse action" by:

    a.    Increasing a price charged for services or goods.

    ***

    c.    Withholding, reducing, or delaying an incentive or other payments.

Wis. Stat. § 218.0116(1)(z).

---

[2] Lidtke has an exclusive store, albeit one that has not been updated in decades. (T. Welch Dep. 27:14-29:14, 9/23/2021.)

Plaintiffs allege that, by "increasing the price that plaintiffs pay Lincoln for vehicles," Ford has committed an adverse action that constitutes both a price increase and the withholding of payments.  (Dkt. 23, Am. Compl. ¶ 73.)

As noted above, the LCP does not change the price a dealer pays for a vehicle.  (M. DeYoung Dec. p. 2, ¶ 15.)  Plaintiffs concede that all dealers pay the same price for vehicles when they purchase them from Ford.  (M. DeYoung Dec. p. 2, ¶ 16); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23, 9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch Dep. 31:15-19, 9/23/2021).  The LCP is available to all dealers and is the same for all dealers.  (M. DeYoung Dec. p. 5, 6, ¶¶ 31, 43.)  The 2.75% facility portion of the LCP is designed to help participating dealers offset their costs associated with building and operating an exclusive store.  (S. McDermott Dec. p. 2, 3, ¶¶ 19-20, 22.)  Plaintiffs concede that they have chosen to not incur those costs.  (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021); *see also* (S. McDermott Dec. p. 1, ¶ 7). Thus, Plaintiffs are not incurring any of the costs the 2.75% LCP payment is designed to help offset.  (*Id.*); (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22).  Plaintiffs concede that they are not being required to build a Vitrine, and that they are free to continue operating from their existing stores.  (D. Dorsch Dep. 13:13-15, 93:7-17); (J. Olson Dep. 47:18-25, 9/27/2021); (T. Fohr Dep. 53:19-23, 9/29/2021); (T. Welch Dep. 80:3-6, 9/23/2021).

Plaintiffs' claim under Wis. Stat. § 218.0116(1)(z) fails because their alleged "price change" does not exist.  The LCP does not change the price a dealer pays for a vehicle and Ford is entitled to summary judgment on this issue.

**D.      Ford is Entitled To Summary Judgment In Its Favor On Count IV - Wis. Stat. §§ 218.0124 and 218.0116(1)(km).**

Ford is entitled to Summary Judgment in its favor on Count IV – Wis. Stat. §§ 218.0124 and 218.0116(1)(km) because the LCP is not a "performance standard." Perhaps realizing that the LCP has nothing to do with vehicle price, Plaintiffs also attempt to contort the LCP into a "performance standard" purportedly used by Ford to assess its Lincoln dealers. These assertions, as with Plaintiffs' claims of a phantom price change, have no basis in reality. Wis. Stat. § 218.0124 states:

> ***Any performance standard or program for measuring dealership performance*** that may have a material effect on a dealer, and the application of any such standard or program by a manufacturer, importer or distributor, shall be fair, reasonable and equitable. Upon the request of any dealer, a manufacturer, importer or distributor shall disclose in writing to the dealer a description of how a performance standard or program is designed and all relevant information used in the application of the performance standard or program to that dealer

Wis. Stat. § 218.0124 (emphasis added). Wis. Stat. § 218.0116(1)(km) makes violating Wis. Stat. § 218.0016(1)(km) actionable in litigation.

Cases addressing Wis. Stat. § 218.0124 illustrate that "performance standards" are required metrics against which dealers are measured, such as sales, and which may be used by the manufacturer in the decision-making process as it relates to purchasing new dealerships or establishing new locations. *See Northgate Motors, Inc. v. GMC*, 111 F. Supp. 2d 1071, 1079 (E.D. Wis. 2000) (discussing an automotive performance standard under Wis. Stat. § 218.0124 used to deny an individual's request to purchase dealership assets); *Racine Harley-Davidson v. Harley-Davidson Motor Co.*, 2008 WI App 135, ¶ 19, 313 Wis. 2d 831, 756 N.W.2d 810 (concerning denial of a dealer's request to open a second location based upon the dealer's poor scores under a customer service performance metric).

Plaintiffs' claims fail because the LCP simply is not a performance standard used to

9

measure dealership performance.  While Ford has such metrics, which measure items like sales expectancy and are applied to all dealers to assess their performance, the LCP, is <u>not</u> one of them.  (M. DeYoung Dec. p. 5, 6, ¶¶ 37, 43.)  The LCP is nothing more than a voluntary program that a dealership can *choose* to participate in, or not, based on each dealer's own determination of what is best for its business.  (M. DeYoung Dec. p. 5, 6, ¶¶ 30, 43.); (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021); (S. McDermott Dec. p. 1, ¶ 7).  The LCP is not mandatory, nor are dealers measured upon their level of participation in it – indeed, roughly 100 Lincoln dealers in the United States have chosen not to participate in LCP at all.  (M. DeYoung Dec. p. 5, 6, ¶¶ 37-38, 43.)

The LCP does not violate Wis. Stat. § 218.0124 or 218.0116(1)(km).  It is a voluntary, optional program that dealers can participate in at their election.  It is not a performance standard on which Ford measures its dealers, and Ford is entitled to summary judgment in its favor.

### E.   Ford is Entitled To Summary Judgment In Its Favor On Count V – U.C.C. 2-305(2)

Ford is entitled to Summary Judgment in its favor on Count V – Violation of "U.C.C. 2-305(2)" because The LCP does not change the price a dealer pays for a vehicle.  Ford presumes that Plaintiffs' reference to "U.C.C. 2-305(2)" is intended to refer to Wis. Stat. § 402.305(2)

> (1)   The parties if they so intend can conclude a contract for sale even though the price is not settled . . .
>
> (2)   A price to be fixed by the seller or by the buyer means a price for that party to fix in good faith.

Wis. Stat. § 402.305.

Plaintiffs allege, yet again, that Ford is "increasing the prices that the plaintiffs must pay for vehicles they purchase from Lincoln."  (Dkt. 23, Am. Compl. ¶ 86.)  As noted above, this is

untrue – Plaintiffs concede that all dealers pay the same price for vehicles when they purchase them from Ford.  (M. DeYoung Dec. p. 2. ¶¶ 15-16); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23, 9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch Dep. 31:15-19, 9/23/2021).  Indeed, all dealers concede that they pay "invoice price" – thus there is not even an "open price" term – the price is fixed.  (*Id.*)  Wis. Stat. § 402.305 is not applicable, and the claim should be dismissed.

### F.   Ford is Entitled To Summary Judgment In Its Favor On Count VI – Violation Section 2(a) of the Robinson-Patman Act (15 U.S.C. § 13(a)).

Ford is entitled to Summary Judgment in its favor on Count VI – Violation of Section 2(a) of the Robinson-Patman Act (15 U.S.C. § 13(a)) because, as noted above, the LCP does not change the price a dealer pays for a vehicle.  Moreover, even if Section 13(a) was in some manner applicable to the LCP (which it is not), Plaintiffs' claims still would fail because they cannot establish any of the necessary elements of a Section 2(a) claim.

*First,* Plaintiffs' claims under the Robinson-Patman Act fail because Ford is not selling Lincoln vehicles to dealers at different prices.  As explained by the U.S. Supreme Court, "[A] price discrimination within the meaning of [§13(a)] is merely a difference in price.'" *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 558 (1990) (quoting *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 549 (1960)).  Plaintiffs concede that all dealers pay the same price for vehicles when they purchase them from Ford.  (M. DeYoung Dec. p. 2. ¶¶ 15-16.); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23, 9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch Dep. 31:15-19, 9/23/2021).  Plaintiffs concede voluntarily participating in the LCP causes them to incur costs.  (D. Dorsch Dep. 63:10-70:5); (Olson Dep. 48:6-51:12, 9/27/2021); (T. Fohr Dep. 54:13-58:19, 9/29/2021); (T. Welch Dep. 63:15-64:24, 9/23/2021).  The LCP payments are designed to help dealers that choose to participate in the program offset those costs.  (S.

11

McDermott Dec. p. 2, 3 ¶¶ 19-20, 22.)  Plaintiffs concede that they have chosen to not incur the

costs associated with the exclusive facility component.  (D. Dorsch Dep. 93:25-94:5, 9/15/2021);

(W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16,

9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021); *see also* (S. McDermott Dec. p. 1, ¶ 7).  Thus,

Plaintiffs necessarily are not incurring the costs the 2.75% is designed to offset.  (*Id.*); (S.

McDermott Dec. p. 2, 3 ¶¶ 19-20, 22).  As there is no price difference, the Section 2(a) claim

necessarily fails.

     *Second*, even accepting, *arguendo*, Plaintiffs' tortured construction of the LCP as a price

difference (which it is not and Ford strongly denies), the Section 2(a) claim would still fail

because the LCP is functionally available to all Lincoln dealers.  In order to succeed on a 13(a)

claim, a price difference must not be "functionally available" to the plaintiffs.  *Metro Ford Truck*

*Sales v. Ford Motor Co,*, 145 F.3d 320, 326 (5th Cir. 1998) (noting functional availability "is a

judicial graft on § [13](a) and is not explicitly embodied in the text of the statute.  Nevertheless,

the theory is clear and coincides with the purpose of the Act in that a price discount equally

available to all purchasers for the same customer and product is not price discrimination.");

*Metro Ford Truck Sales v. Ford Motor Co,*, 145 F.3d 320, 326 (5th Cir. 1998) (internal

quotations omitted).  "[A] discount is functionally available when objective standards exist to

guide . . . in qualifying for the category of purchasers receiving the discount." *Century Hardware*

*Corp. v. Acme United Corp.*, 467 F. Supp. 350, 355 (E.D. Wisc. 1979).  Pricing changes that are

a result of a purchaser's smaller investment in its business are still functionally available to that

purchaser.  *Krist Oil Co. v. Bernick's Pepsi-Cola of Duluth, Inc.* (*Krist Oil I*), 354 F. Supp. 2d

852, 856-857 (W.D. Wisc. 2005) (prices were functionally available and not price discrimination

because "the lowest case price is unavailable to plaintiff not because of its disproportionately

small purchasing power but because of other unrelated investments plaintiff made.")  *Id.* at 857. Here, the facility component of the LCP is available to all dealers, regardless of size or location, on the same terms.  (M. DeYoung Dec. p. 5, 6, ¶¶ 31, 43.)  Each of the Plaintiffs concede that they have the opportunity to participate, but have simply made the business decision not to.  (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021); *see also* (S. McDermott Dec. p. 1, ¶ 7).  Thus, even if the LCP was governed by the statute, it is functionally available to Plaintiffs.

*Third*, Plaintiffs' claims under Section 2(a) of the Robinson-Patman act fail because none of them has been able to articulate any specific injury or any favored purchaser.  Private causes of action under section 2(a) of the Robinson-Patman Act are authorized under § 4 of the Clayton Act, 15 U.S.C. § 15(a), which allows private suits by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws," and therefore the U.S. Supreme Court has concluded that a plaintiff must show an actual injury in order to have a claim.  *J. Truett Payne Co. v. Chrysler Motors*, 451 U.S. 557, 562, 68 (1981); *see also Krist Oil Co. v. Bernick's Pepsi-Cola* ("*Krist Oil II*"), No. 04-C-187-C, 2005 U.S. Dist. LEXIS 7709, *9-10 (W.D. Wis. April 25, 2005) (granting summary judgment on Robinson-Patman claim due to absence of injury).  Here, none of the Plaintiffs could identify any particular injury that purportedly occurred as a result of this phantom "price differential."  (Olson Dep. 51:18-52:16, 85:2-87:11, 9/27/2021); (Olson Dep. 51:18-52:16, 85:2-87:11, 9/27/2021); (T. Fohr Dep. 78:15-81:4, 9/29/2021); (T. Welch Dep. 66:8-67:11 9/23/2021).  Plaintiffs concede that all dealers pay the same prices for vehicles.  (M. DeYoung Dec. p. 2. ¶ 16); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23, 9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch

13

Dep. 31:15-19, 9/23/2021).  Further, Plaintiffs could not identify any specific customer or sale they lost as a result of the claimed  "price differential."  (Olson Dep. 51:18-52:16, 85:2-87:11, 9/27/2021); (T. Fohr Dep. 78:15-81:4, 9/29/2021); (T. Welch Dep. 66:8-67:11 9/23/2021).  As Plaintiffs have not articulated (and cannot articulate) any injury, the Section 2(a) claim fails.

G.     **Ford is Entitled To Summary Judgment In Its Favor On Count VII – Violation Wis. Stat. § 133.04.**

Ford is entitled to Summary Judgment in its favor on Count V – Violation of Wis. Stat. § 133.04 because, once again, this claim is contingent upon the existence of a price differential, and no such price differential exists.  Wis. Stat. § 133.04 states, in relevant part:

> No person may discriminate, either directly or indirectly, in price between different purchasers of commodities of like grade and quality, for the purpose or intent of injuring or destroying competition in any level of competition or any person engaged therein.

Wis. Stat. § 133.04.

As set forth above, the LCP does not change the price a dealer pays for a vehicle.  (M. DeYoung Dec. p. 2. ¶ 15.)  Plaintiffs concede that all dealers pay the same price for vehicles when they purchase them from Ford.  (M. DeYoung Dec. p. 2. ¶ 16); (D. Dorsch Dep. 44:13-24, 9/15/2021); (J. Olson Dep. 42:17-23, 9/27/2021); (T. Fohr Dep. 65:2-6, 9/29/2021); (T. Welch Dep. 31:15-19, 9/23/2021).  The LCP is designed to help them offset costs.  (D. Dorsch Dep. 63:10-70:5); (Olson Dep. 48:6-51:12, 9/27/2021); (T. Fohr Dep. 54:13-58:19, 9/29/2021); (T. Welch Dep. 63:15-64:24, 9/23/2021); (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22.)  Plaintiffs concede that they have chosen to not incur those costs.  (D. Dorsch Dep. 93:25-94:5, 9/15/2021); (W. Dorsch Dep. 35:6-19, 9/15/2021); (Olson Dep. 57:1-20, 9/27/2021); (T. Fohr Dep. 69:24-16, 9/29/2021); (T. Welch Dep. 52:4-9, 9/23/2021); *see also* (S. McDermott Dec. p. 1, ¶ 7).  Thus, there is nothing to offset.  (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22).  Plaintiffs concede that they are not being required to build a Vitrine, and that they are free to continue operating from their

14

existing stores.  (D. Dorsch Dep. 13:13-15, 93:7-17); (J. Olson Dep. 47:18-25, 9/27/2021); (T.

Fohr Dep. 53:19-23, 9/29/2021); (T. Welch Dep. 80:3-6, 9/23/2021).

The LCP does not violate Wis. Stat. § 133.04.  It does not change prices, and therefore it

necessarily cannot be price discrimination designed with the intent to destroy competition.  Ford

is entitled to summary judgment in its favor.

> **H.   Ford is Entitled To Summary Judgment In Its Favor On Count VIII –
> Preliminary and Permanent Injunction.**

Ford is entitled to Summary Judgment in its favor on Count VII – Preliminary and

Permanent Injunction, because this is not a separate cause of action, but is rather a form of relief

entirely dependent upon Plaintiffs' remaining claims.  *Knutson v. Vill. of Lakemoor*, 932 F.3d

572, 576 n.4 (7th Cir. 2019) ("with respect to injunctive relief, that is a remedy, not a cause of

action, and thus should not be pleaded as a separate count.").  As Plaintiffs' "injunctive relief"

cause of action is not a cause of action at all, and is dependent upon the success of Plaintiffs'

other claims, Ford is entitled to summary judgment in its favor.

## II.   FORD IS ENTITLED TO SUMMARY JUDGMENT ON THE NEW CLAIMS IN PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT.

As this Court is aware, eight months after the deadline to amend, Plaintiffs filed a motion

for leave to add entirely new claims to this litigation a mere *eight days* before the summary

judgment deadline.  Indeed, Ford's response to that motion is due the same day as this motion.

As such, these new claims are not a part of this litigation, and – as set forth in Ford's response to

that motion – should not become a part of this matter.  Regardless, Ford addresses these new

claims here out of an abundance of caution, in the event Plaintiffs are allowed to add these new

legal theories at such a late and prejudicial date. As noted in Ford's response to the motion to

amend, both claims fail, and amendment would be futile in any event.

15

A.      **Violation of Duty Of Good Faith and Fair Dealing**

Ford is entitled to summary judgment on Plaintiffs' good faith and fair dealing claim. Plaintiffs bring this claim concerning their Michigan contracts with Ford, which are governed under Michigan law.   (Declaration of Robert H. Ellis, Exhibit A, Lincoln Sales and Service Agreement, Standard Terms and Conditions § 32.)   Michigan[3] does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself.  *Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 411, 295 N.W.2d 50 (1980).  The limited exception to this rule applies to breach of contract claims when "a party to a contract makes the manner of its performance a matter of its own discretion." *Ferrell v. Vic Tanny Int'l, Inc.*, 137 Mich. App. 238, 243, 357 N.W.2d 669 (1984). Where a complainant fails to allege that the contract at issue leaves the manner of performance to a defendant's discretion, such a claim is properly dismissed.  *McLiechey v. Bristol W. Ins. Co.*, 408 F. Supp. 2d 516 (W.D. Mich. 2006).

Plaintiffs have not identified a specific contract provision that is left to Ford's discretion, let alone any term in which Ford failed to exercise its discretion in bad faith.  In fact, Plaintiffs conceded that Ford is not required to offer the LCP at all; it is an optional program that Ford can end at any time, and does not arise from the parties' contracts.  (M. DeYoung Dec. p. 5, 6, ¶¶ 40, 43); (D. Dorsch Dep. 48:22-49:1); (Olson Dep. 43:19-23, 9/27/2021); (T. Fohr Dep. 49:10-13, 53:7-18, 9/29/2021); (T. Welch Dep. 44:10-17, 9/23/2021).   Further, Plaintiffs do not even identify (nor can they) any purported acts by Ford that would be in bad faith.  Instead, contrary is

---

[3] Even if Wisconsin law applied here, the result would be no different, because while Wisconsin law recognizes the implied contractual duty of good faith and fair dealing in commercial contracts (*See Market St. Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 593-94 (7th Cir. 1991)), the implied covenant "does not support an independent cause of action for failure to act in good faith under a contract." *Hauer v. Union State Bank*, 192 Wis. 2d 576, 597, 532 N.W.2d 456, 464 (Ct. App. 1995).

true – the LCP is a program designed to *benefit* dealers such as Plaintiffs in supporting their investment in the Lincoln brand by helping to offset certain costs.  (M. DeYoung Dec. p. 2. ¶ 8); (S. McDermott Dec. p. 2, 3 ¶¶ 19-20, 22.)  The LCP is available to all dealers and is the same for all dealers.  (M. DeYoung Dec. p. 5, 6, ¶¶ 31, 43.)  As Plaintiffs have not, and cannot identify any contractual obligation that has not been acted upon in good faith by Ford, the claim fails. Ford would be entitled to summary judgment in its favor on this claim if it was added to the litigation.

### B.   Violation of Duty Of Section 2(d) of The Robinson-Patman Act (15 U.S.C. § 13(d).

Implicitly conceding that there are no price changes or differentials at issue here, Plaintiffs attempt to salvage their claims through a last minute recharacterization of the issue as one falling under Section 2(d) of the Robinson-Patman Act (15 U.S.C. § 13(d)).  These claims also fail, and Ford would be entitled to summary judgment in its favor if the Court were to permit Plaintiffs to amend to add this claim.  Section 2(d) states that:

> It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any **services or facilities** furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, **unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities**.

15 U.S.C. § 13(d).

As a threshold matter, Plaintiffs' claims fail because, as with the Section 2(a) claim, Plaintiffs cannot articulate any injury, which is a necessary prerequisite of any claim under Robinson-Patman.  *See J. Truett Payne Co.*, 451 U.S. at 562, 68 (1981).  As noted above,  none of the Plaintiffs could identify any particular injury that purportedly occurred as a result of the

LCP.  (Olson Dep. 51:18-52:16, 85:2-87:11, 9/27/2021); (Olson Dep. 51:18-52:16, 85:2-87:11, 9/27/2021); (T. Fohr Dep. 78:15-81:4, 9/29/2021); (T. Welch Dep. 66:8-67:11 9/23/2021).  As Plaintiffs have not articulated (and cannot articulate) any injury, the Section 2(d) claim fails.

Additionally, Plaintiffs' claim fails on the pleadings alone as Plaintiffs do not make any effort to identify any other specific Ford dealer receiving "services or facilities" that Plaintiffs do not have the opportunity to receive, nor do they even identify what "services or facilities" they attempt to reference, or how the LCP payments could even be considered "services or facilities" under the Robinson-Patman Act.  As a preliminary matter, this deficiency would be grounds for dismissal under Rule 12(b)(6). *See Matthew Enter. v. Chrysler Grp. LLC*, Case No. 13-cv-04236-BLF, U.S. Dist. LEXIS 81339, at *19 (N.D. Cal. Jan. 12, 2015) (finding plaintiff failed to state a claim under Section 2(d) because it failed to identify any "services or facilities" for which compensation was provided to competitor and not proportionally provided to plaintiffs).

Regardless, Federal Trade Commission guidance on the term "services or facilities" in 16 C.F.R. § 240.7 shows the LCP offset payments associated with the facility would not fall into that category. There, the FTC provides the following list of promotional services and facilities covered by Sections 2(d) and (e):

Cooperative advertising;

Handbills;

Demonstrators and demonstrations;

Catalogues;

Cabinets;

Displays;

Prizes or merchandise for conducting promotional contests;

Special packaging, or package sizes; and

Online advertising.

The LCP is none of these things.  In fact, programs like the LCP that provide payments associated with dealership buildings and real estate are *not* a "service or facility."  *See, e.g., Portland 76 Auto/Truck Plaza v. Union Oil Co.*, 153 F.3d 938 (9th Cir. 1998).

Further, even assuming Plaintiffs *could* identify a "service or facility," the Section 2(d) claim still fails because the LCP is offered on proportionally equal terms to all Lincoln dealers. Here, the LCP is available to all dealers and is the same for all dealers – each dealer has the opportunity to earn 2.75% of MSRP on every vehicle sold.  (M. DeYoung Dec. p. 5, 6, ¶¶ 31, 43.)  The rules are the same for all dealers, regardless of location or size.  ( *Id.*)  Additionally, all of the dealers are free to sell as many vehicles as they can.  (M. DeYoung Dec. p. 1. ¶ 4.)  As such, even if the LCP were construed to fall under 2(d) (which it does not), it is still available on a proportionally equal basis to all dealers and Ford therefore would be entitled to summary judgment in its favor in this claim was added to this litigation.

## CONCLUSION

Discovery has revealed that there are no issues of material fact, and that Ford is entitled to judgment in its favor as a matter of law.  Ford's motion for summary judgment should be granted.

Dated: November 11, 2021                    Respectfully submitted,

                                        */s/ Robert Hugh Ellis*
                                        Robert Hugh Ellis, 1057332
                                        DYKEMA GOSSETT PLLC
                                        39577 Woodward Ave., Suite 300
                                        Bloomfield Hills, MI 48304
                                        248-703-0718
                                        rellis@dykema.com
                                        **ATTORNEYS FOR DEFENDANT FORD MOTOR COMPANY**